940 F.2d 1539
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Ernest John YOUNG, Plaintiff-Appellant,
v.
Gary DELAND, Defendant-Appellee.
 No. 90-4180.
 United States Court of Appeals, Tenth Circuit.
 Aug. 12, 1991.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Young, a state inmate, filed a pro se habeas corpus petition requesting relief from a parole revocation proceeding. The district court denied relief and Mr. Young appeals pro se.
 
 
 3
 Mr. Young was convicted and committed to prison in 1986 and was paroled in 1988. Approximately eight months after he was paroled Mr. Young was arrested and charged with two counts of assault against his wife, one against his five-year-old son, a charge of consuming alcohol (which was forbidden by his parole terms) and a charge that he had used a controlled substance. Mr. Young waived his prerevocation hearing and was returned to prison where he was scheduled for a parole revocation hearing. At the hearing Mr. Young was represented by appointed counsel and Mr. Young admitted an assault upon his wife and the consumption of alcohol and in return the remaining charges were dropped.
 
 
 4
 Mr. Young subsequently filed a petition for postconviction relief in the state court alleging ineffective assistance of counsel at the parole revocation hearing and the state courts denied relief.
 
 
 5
 Mr. Young next filed his pro se habeas corpus petition with the federal court and alleged he did not knowingly, wilfully and intelligently admit his guilt to the parole violation charges and he raised ineffective assistance of counsel.
 
 
 6
 The district court reviewed the transcript of the parole revocation hearing and concluded Mr. Young's "plea" was made voluntarily and knowingly. The district court further concluded Mr. Young's attorney competently represented him. The district court then denied habeas corpus relief.
 
 
 7
 Mr. Young appeals pro se, raises the same issues, and argues that the true facts were suppressed.
 
 
 8
 The record on appeal has been examined and we cannot conclude the district court's findings are clearly erroneous. Substantial evidence exists to support the district court's findings.
 
 
 9
 The judgment of the district court is AFFIRMED. All outstanding motions are denied. The mandate shall issue forthwith.
 
 APPENDIX
 IN THE UNITED STATES DISTRICT COURT
 DISTRICT OF UTAH--CENTRAL DIVISION
 
 10
 Ernest John Young, Plaintiff,
 
 
 11
 vs.
 
 
 12
 Gary Deland, Defendant.
 
 Civil No. 89-C-1143G
 
 13
 Oct. 15, 1990.
 
 MEMORANDUM DECISION AND ORDER
 
 14
 On December 22, 1989, the plaintiff, an inmate under the jurisdiction of the Utah Department of Corrections, filed a pro se petition under 28 U.S.C. Sec. 2254 for writ of habeas corpus. The petition makes two claims for post-trial relief arising out of a parole revocation hearing held before the Board of Pardons on March 1, 1989. First, plaintiff claims that his pleas of guilty to the parole violations were unlawfully induced and were not made voluntarily. Second, plaintiff claims that he was denied his right to effective assistance of counsel at his parole revocation hearing.
 
 
 15
 On November 27, 1988, plaintiff was arrested and charged with five parole violations: Counts 1 and 2 alleged assaults on his wife; Count 3 alleged assault on his stepson; Count 4 alleged alcohol consumption; and Count 5 alleged use of a controlled substance. Plaintiff waived his right to a preliminary revocation hearing and at the March 1, 1989 hearing he plead guilty to Counts 2 and 4, and the Parole Department agreed to dismiss the remaining counts. Plaintiff's parole was revoked and he was returned to the Utah State Prison. He was given a new parole date of November 27, 1990--two years from the date of his arrest on the parole violation charges. The Board of Pardons appointed Mr. Earl Xaiz to serve as plaintiff's attorney at the parole revocation hearing.
 
 
 16
 On January 5, 1990, the court referred the case to the magistrate pursuant to 28 U.S.C. Sec. 636(b)(1)(B). The magistrate directed that the defendant file a response to the habeas petition, which was done. The magistrate has also entered orders relative to certain discovery motions filed by plaintiff.[1] On September 17, 1990, the magistrate submitted a Report and Recommendation that the petition be dismissed. On September 21, 1990, plaintiff filed an Objection to the magistrate's Report and Recommendation.[2] The court has reviewed the entire file in this case, including the petition and the affidavits submitted in connection therewith, as well as the transcript of the parole hearing of March 1, 1989. This Order is based upon a de novo review. The court determines that oral argument would be of no material assistance and that the matter may be decided on the basis of the existing record.
 
 ANALYSIS
 I. CLAIM OF UNKNOWING ADMISSIONS OF GUILT
 
 17
 Plaintiff's first claim in his habeas petition is that he did not knowingly plead guilty to parole violation Count 2, assault on his wife, and to Count 4, consumption of alcohol on November 29, 1989. Plaintiff indicated at the time of the hearing that he had previously been given a copy of the allegations and that he had just reviewed them. Plaintiff was specifically asked by the parole board how he plead to the allegation contained in counts 2 and 4, although the counts were not formally read to plaintiff. Transcript of March 1, 1989 Parole Revocation Hearing, pp. 2-3. Plaintiff stated "Guilty" in answer to both inquiries. Id. at 3. The hearing transcript also indicates that these pleas were offered in connection with an agreement that parole violation counts 1, 3 and 5 would be dismissed by the Board of Pardons. Id. at 2.
 
 
 18
 Following his guilty pleas on counts 2 and 4, plaintiff was given an opportunity to explain his views regarding the conduct alleged in the parole violation counts. Plaintiff stated that "my wife and kids are important to me now" and that "I don't want alcohol in my life no more." Id. at 6. Plaintiff further stated at his parole revocation hearing:
 
 
 19
 [T]here's a few problems I've had in my past and, you know, I need to put it all behind, it's time to forget it all and move on in life. I've got a wife and kids now and that's what I want, that's what my attention is on and that includes forgetting alcohol and drugs and getting them out of my life.
 
 
 20
 Id. at 6.
 
 
 21
 Later in the parole revocation hearing, Board of Pardons member Ms. Palacios inquired further of plaintiff regarding his physical abuse of his family. Plaintiff gave inconsistent responses to these inquires. Plaintiff admitted to having hit his wife but he denied that he was the cause of her broken nose and dislocated shoulder. Id. at 8. Thereafter, the following colloquy occurred between Ms. Palacios and plaintiff:
 
 
 22
 Ms. Palacios: Did she go to Castleview Hospital with injuries?
 
 
 23
 Mr. Young: I believe that on the night that that happened I contacted my parole officer and I contacted the Price City Police and I requested to take her to the hospital that night and everything because she told me she was okay. You know, I do try to take the right proper steps. I contacted Harold, my mental health worker and--
 
 
 24
 MS. PALACIOS: Did you hit her and hurt her?
 
 
 25
 MR. YOUNG: Did I hit her and hurt her? Well, I have before, we've had a couple of fights and I have hurt her.
 
 
 26
 MS. PALACIOS: Did you hit her more than once?
 
 
 27
 MR. YOUNG: I think we fought twice.
 
 
 28
 MS. PALACIOS: And the damage you do is damage that could be seen on the parts of her?
 
 
 29
 MR. YOUNG: I think I've grabbed her on the arms before, she bruises really easy, and I've left bruises on her arms before and I think one time I did--well, we were wrestling around and I did give her a black eye but I received one too, I got one too. You know, we've fought a couple of times. You know, I'm not really a violent person, I don't want to be a violent person.
 
 
 30
 Id. at 8-9. At the end of Ms. Palacios's questioning, which included questions regarding uncharged or dismissed charges, she remarked: "Mr. Young, I'm convinced I'm not getting a straight answer out of you. I have nothing further." Id. at 12.
 
 
 31
 Based on the court's de novo review of the plaintiff's parole revocation hearing, the court finds that the plaintiff knowingly plead guilty to the parole violation allegations of Counts 2 and 4 which was the basis for plaintiff's parole revocation. In this regard, the court rejects plaintiff's numerous allegations submitted in connection with his habeas petition that he did not commit the acts which he plead guilty to but that he had been the victim of a police conspiracy. These allegations were noted in the parole violation report which was before the Board at the time of the hearing. Nothing was said by plaintiff at the hearing about any police conspiracy or that a police officer had abused his wife, and not him. In fact, his statements at the hearing indicate to the contrary.
 
 
 32
 Plaintiff's claim that his pleas of guilty to counts 2 and 4 were based on a belief that he would not be incarcerated any further does not render his plea involuntary. The Tenth Circuit recently explained:
 
 
 33
 [W]hen a defendant pleads guilty, he makes a decision based on a calculated risk that the consequences that will flow from entering the guilty plea will be more favorable than those that would flow from going to trial. This inherent uncertainty does not make the plea involuntary. See Johnson v. United States, 539 F.2d 1241, 1243 (9th Cir.1976), cert. denied, 431 U.S. 918 (1977).
 
 
 34
 Bailey v. Cowley, No. 89-5100, Slip Op. (10th Cir. Sept. 25, 1990). In this case, plaintiff potentially could have had his parole revoked until the end of his sentence, which was then set to expire on March 1, 1992.[3] After pleading guilty to two of the five charges, plaintiff was given a new parole date of November 27, 1990.
 
 
 35
 Plaintiff testified that he had been given a copy of the allegations and that he had recently reviewed them. He did not equivocate in his answer of "guilty" to those specific charges. The record does indicate that plaintiff thereafter made some inconsistent statements when questioned about the particulars of those charges. The court views these inconsistencies as bearing upon plaintiff's credibility or upon his inability to accept responsibility for his actions. Plaintiff's testimony does not indicate to the court that plaintiff did not understand the nature of the charges that were brought against him nor do they indicate that he did not knowingly plead guilty to those charges. Accordingly, the court agrees with the magistrate that plaintiff's first claim of not making a voluntary plea to parole violation counts 2 and 4 is without merit.
 
 II. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 36
 The Sixth Amendment right to counsel does not normally attach to parole revocation hearings. Morrissey v. Brewer, 408 U.S. 471 (1972). However, if a probationer suffers from an intellectual deficit then he does have a Sixth Amendment right to effective counsel at his parole revocation hearing. Gagnon v. Scarpelli, 411 U.S. 778, 790-91 (1973). Defendant has not argued that plaintiff did not have a federal constitutional right to counsel at his parole revocation hearing, and plaintiff alleges that he was represented by attorney Earl Xaiz because he has some possible intellectual deficits. Therefore, this court will assume, as did the magistrate in his Report and Recommendation, that plaintiff did have a Sixth Amendment right to effective counsel at his parole revocation hearing.
 
 
 37
 The Supreme Court case Strickland v. Washington, 466 U.S. 668 (1984), sets forth a two-part test to establish an ineffective assistance of counsel claim under the Sixth Amendment. First, the reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. In making this judgment, the court must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Second, if such an error was made by counsel, the court must determine whether the error affected the judgment of the tribunal in the nature of prejudice to the defendant. Id. at 661-62. The Court in Strickland indicated that "[i]n certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." Id. at 692.
 
 
 38
 Plaintiff claims that his attorney did not render him effective assistance because he did not take adequate time to interview the plaintiff or other relevant witnesses, such as plaintiff's wife, before the hearing, and also that his attorney did not attempt to have plaintiff's wife testify at the hearing. The initial comments at the revocation hearing made by plaintiff and by attorney Xaiz tend to indicate that Xaiz had not spent much time at all talking with plaintiff prior to the hearing:
 
 
 39
 HEARING OFFICER: And is Mr. Xaiz representing you?
 
 
 40
 MR. YOUNG: Yes, sir. I believe so. I don't (inaudible.)
 
 
 41
 MR. XIAZ: I introduced myself as Earl.
 
 HEARING OFFICER: Okay. (Inaudible.)
 
 42
 MR. XAIZ: We do. Just for the sake of time--well, I ought to indicate, one of the reasons that we've had to hold up on this hearing is that Mr. Young was in a different in--or a different building here at the prison than what was indicated when I came out and we did not have a chance to interview him today. In order for the sake of time, however, we're in agreement with the Parole Department that Mr. Young would admit or plead guilty to allegations No. 2 and allegation No. 4 and, in return, allegation No. 1, allegation No. 3 and allegation No. 5 would be dismissed. I think the Board probably would note from the space of allegation 1 that there's a timeliness issue and allegation 5 was based upon a hearsay type situation. Based upon that and other factors, in terms of what we've agreed to for recommendation, we would propose that we go that way and avoid reading those allegations, with the Board's permission.
 
 
 43
 Transcript of March 1, 1989 Parole Revocation Hearing, pp. 1-2.
 
 
 44
 The hearing transcript does indicate that attorney Xiaz did not spend much time with plaintiff prior to representing him at the parole revocation hearing. However, from statements made by Mr. Xaiz and plaintiff at the hearing it is obvious that they had talked about a plea agreement whereby plaintiff agreed that he would plead guilty to counts 2 and 4 if counts 1, 3 and 5 were dismissed. It is apparent that Mr. Xaiz had reviewed plaintiff's file in advance of the hearing, and was aware of plaintiff's allegations that he was being victimized by certain police officers. However, the file also apparently contained a signed statement by plaintiff's wife that stated that she had been beaten by the plaintiff. Furthermore, the court considers the role of counsel in a parole revocation hearing to be much less extensive than that of counsel in a trial setting, or when a criminal defendant makes a plea to new criminal charges as opposed to parole revocation charges. See Gagnon v. Scarpelli, 411 U.S. 778, 786-90; Annotation, Procedural Requirements, Under Federal Constitution, Applicable to Revocation of Probation or Parole, 36 L.Ed.2d 1077 (1974 & Supp.1989).
 
 
 45
 Under all these circumstances, the court concludes that attorney Xiaz's acts or omissions were not outside the wide range of professionally competent assistance. The court further concludes that even if Xiaz's conduct was considered by the court to have been inadequate, the statements and admissions made by plaintiff at his revocation hearing are such that the court is convinced that the judgment of the Board of Pardons would not have been any different. Only a finding of probable cause is necessary for revocation of parole. Utah Code Ann. Sec. 77-27-11 (1990). Accordingly, the court holds that plaintiff did not suffer a violation of his Sixth Amendment right to effective assistance of counsel pursuant to the Supreme Court's two-step analysis in Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 46
 Based on the foregoing, the court agrees with the magistrate's Report and Recommendation and hereby orders that plaintiff's petition for a writ of habeas corpus be DENIED.
 
 
 47
 The court further orders that all pending motions of plaintiff submitted in this case are accordingly DENIED and the action is DISMISSED.
 
 
 48
 IT IS SO ORDERED.
 
 
 49
 /s/ J. THOMAS GREENE
 
 UNITED STATES DISTRICT JUDGE
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 One such discovery order was objected to by plaintiff, and this court considered that objection but affirmed the magistrate's order dismissing the motion for discovery in an Order dated August 20, 1990
 
 
 [2]
 Plaintiff's Objection does not address the analysis made by the magistrate regarding both claims in the petition. The Objection merely repeats the allegations raised in the Petition and in the affidavits submitted in connection therewith
 
 
 [3]
 The Board's reference at the revocation hearing to an expiration date of March 1, 1991, rather than March 1, 1992, was simply a misstatement. The Judgment and Commitment signed by Judge Bunnell on March 2, 1987, noted that defendant was to serve a term in the Utah State Prison "not to exceed five (5) years," i.e., until March 1, 1992. Accordingly, plaintiff's recent "Motion for Order Declaring Expiration Date of 3-1-91 and Affidavit in Support of Request for Subpoena," filed on October 9, 1990, is without merit. The Board of Pardons has recently adjusted plaintiff's expiration date to November 17, 1991, to credit plaintiff for a total of 105 days that plaintiff was in custody for diagnostic evaluation. See letter from State Board of Pardons to Judge Greene dated Sept. 12, 1990